**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 23-03587-EG |
| | Chapter 13 |
| Willie Carlton Kemmerlin, | **ORDER** |
| Debtor(s). | |

**THIS MATTER** is before the Court to consider confirmation of the Pre-Confirmation Modified Chapter 13 Plan filed by Willie Carlton Kemmerlin ("Debtor") on March 7, 2024.[1] Based upon the record, the arguments of the parties at a hearing held on April 11, 2024, and the evidence presented, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

Debtor filed for Chapter 13 bankruptcy relief on November 21, 2023, and is representing himself in the case without the assistance of counsel. On December 4, 2023, Debtor filed his schedules and statement of financial affairs, reflecting assets with an estimated value of $57,894.00 and liabilities of $52,600.00.[2] Among other assets, Debtor's Schedule A reflects an interest with a value of $39,000.00 in a mobile home located in Ridgeville, South Carolina.[3] Debtor also lists an interest in two vehicles with a total estimated value of $4,200.00. According to Schedule I, Debtor is a self-employed wholesaler, earning net income of $720.00 per month. Schedule J indicates he lives with

---

[1] ECF No. 35.
[2] ECF No. 16.
[3] In Schedule A, Debtor describes the nature of his ownership interest in the mobile home as "my life estate" and indicates the current value of the entire property to be $51,000.00.

1

his elderly mother and estimates monthly expenses of $1,511.00—thus resulting in a net monthly income of negative $791.00.[4]

Debtor lists SouthState Bank as his only secured creditor on Schedule D, with a total "disputed" claim of $52,000.00, secured by the mobile home with a listed value of $13,000.00.[5] The only other debts that Debtor lists are unsecured debts owed to Bank of America in the amount of $500.00 and a debt of $100.00 owed to Macy's, both listed on Schedule E as "disputed" claims. The claims register reflects (a) unsecured claims filed by T-Mobile, Citibank, and ACS Primary Care Physicians in the amounts of $93.61, $403.28, and $856.10, respectively, and (b) a secured claim filed by SouthState Bank in the amount of $16,436.68 (the "SouthState Bank Claim").[6] The SouthState Bank Claim reflects prepetition arrearages totaling $9,290.43.

On November 28, 2023, the Chapter 13 Trustee (the "Trustee") filed a Notice and Motion to Dismiss or Convert at Confirmation[7] (the "Notice of Dismissal") requesting that the Court dismiss or convert the case at a confirmation hearing "if the Debtor fails to

---

[4] In Schedule J, Debtor added a note indicating: "I plan to decrease all bills and living expenses, I already live below poverty lines. So I have no choice, but to try and increase my income. My home is all I have, I don't wanna [sic] lose it, after paying 17 years on it. I only owe supposedly 12 to 13 thousand dollars. I can't lose my home for this." Debtor also filed a handwritten note captioned as "Statement of Payment Advices" indicating that he does not have a regular job, he has a "company that buys at wholesale and sells at retail", and he usually sells the merchandise at flea markets and special events. In the same note, he indicates that his mortgage payment is $493.00, he owes approximately $12,000.00 on his mortgage, and "anything else is a superimposed inflation of fraudulent activity." *See* ECF No. 15, filed Dec. 11, 2023.
[5] Schedule D includes a note which states: "Executive orders 6073, 6102, 6111, 6260 (March 9, 1933) (see HJR 192, 73 Congress, 1 session) 48 stat. 112 see: *Hilton vs Guyot*, 159 U.S. 113 (1895) Emergency Banking Relief Act."
[6] POC No. 3 and amendments. Claim 3-2 attaches to it a copy of the original Consumer Security Agreement indicating that the original borrower was Ella Mae Kemmerlin, but Debtor was subsequently added as a third-party grantor on or about October 15, 2012. The SouthState Bank claim further reflects the following breakdown for the amount of the claim: (1) principal of $12,231.92, (ii) interest to November 21, 2023 of $1,305.69, (iii) late charges of $203.00, and (iv) pre-petition legal fees through November 21, 2023 of $2,704.97, minus $8.90 credited from projected escrow reserves.
[7] ECF No. 11.

2

provide and/or file documents . . . or fails to attend meeting of creditors or any mandatory hearing."

On December 4, 2023, Debtor filed his first plan (the "Original Plan"), proposing to make 26 monthly payments of $493.00 for a total of $12,818.00. In section 3.2 of the Original Plan, Debtor estimated SouthState Bank's Claim at $12,000.00 and the value of the collateral at $15,000.00 and proposed to make monthly mortgage payments to the Trustee in the amount of $493.00.[8] Section 5.1 of the Original Plan estimated to pay unsecured creditors less than 100% of their claims. SouthState Bank objected to the Original Plan, arguing that the proposed payment would not pay its claim in full and the plan was not feasible.[9] In its objection, SouthState Bank further contended that its claim amount includes costs, fees, and other amounts verified by affidavit which were all established in a state court proceeding pending in Dorchester County, South Carolina, captioned *SouthState Bank vs. Ella Mae Kemmerlin and Willie Carlton Kemmerlin*, Case No. 2023-CP-18-00448 (the "State Court Action"). SouthState Bank further asserted that in the State Court Action, Debtor made allegations of wrongdoing by the mortgagee, asserting claims that were not supported by any evidence presented at the hearings. SouthState Bank further posited that Debtor's bankruptcy case was not filed in good faith, as it was commenced only after the State Court found Debtor's claims meritless and entered judgment in favor of SouthState Bank, allowing repossession of the collateral. The Trustee also objected to the Original Plan, asserting that it did not meet the disposable income requirements set forth in 11 U.S.C. § 1325(b) and was not feasible, as Debtor's reported

---

[8] ECF No. 17. The Original Plan was filed on an outdated local form. In section 8.1 of the Original Plan for non-standard plan provisions, Debtor stated "my plan is to pay the trustee $493 monthly for 26 months or until debt is paid. I only owe $12,000 or so, anything esle [sic] is them adding stuff."
[9] ECF No. 19, filed on Jan. 8, 2024.

3

income was not sufficient to pay the Trustee as proposed in the Original Plan. The Trustee also asserted that based on a review of the Court's record, it did not appear that Debtor ever served any parties in interest with a copy of the Plan as required by the Federal Rules of Bankruptcy Procedure and the South Carolina Local Bankruptcy Rules.[10]

A confirmation hearing on the Original Plan was held on February 1, 2024, at which the Court found the plan was not feasible, the planned payments did not reflect the full amount of SouthState Bank's secured claim, and the 26-month term length did not comply with the Bankruptcy Code. The Court suggested that Debtor seek counsel or pro bono legal services and noted that the Court could not allow a debtor to linger indefinitely in a bankruptcy case without a confirmed or confirmable plan. On February 6, 2024, the Court entered an order indicating that the Original Plan did not comply with the confirmation requirements and providing Debtor ten (10) days to file a modified plan pursuant to SC LBR 3015-2 ("C-II Order").[11] The C-II Order further indicated that "[a]ny other conditions incident to confirmation which may have been orally approved by the Court during the hearing are hereby made a part of this Order. If the debtor(s) fail(s) to comply with the requirements of these conditions as ordered, the case may be dismissed without further notice or hearing."

Debtor filed a modified plan on February 8, 2024 (the "First Modified Plan"),[12] which proposed to pay $457.00 for 36 months and $45.70 for 36 months—for a total of $18,097.20. In Section 3.1 of the First Modified Plan, Debtor indicated that the current installment payments to SouthState Bank were $502.70 per month but did not indicate that

---

[10] ECF No. 20, filed on Jan. 12, 2024.
[11] ECF No. 23.
[12] ECF No. 24. Debtor used the National Form 113, rather than the local form.

4

any arrearages would be paid through the Plan. The Trustee objected to the First Modified Plan on the grounds that it did not appear that Debtor had mailed a copy of the Plan to all creditors, the proposed plan payment did not include sufficient funds to pay the Trustee's fee of 10%, and the plan as modified still appeared to have feasibility issues given Debtor's reported net monthly income of negative $791.00.[13]

On February 22, 2024, Debtor filed a second modified plan (the "Second Modified Plan), this time on the correct local form.[14] The Second Modified Plan proposed to make payments of $461.90 for 36 months <u>and</u> $50.27 for 36 months and value SouthState Bank's claim as follows:

| Name of creditor | Estimated amount of creditor's total claim | Collateral | Value of collateral | Amount of claims senior to creditor's claim | Amount of secured claim | Interest rate | Estimated monthly payment to creditor (disbursed by the trustee) |
|---|---|---|---|---|---|---|---|
| South State bank | $16,488.68 | Mobile home | $20,000 | 0 | $16,488.68 | 10 % | $512.17 (or more) |

Insert additional claims as needed.

3.3 Other secured claims excluded from 11 U.S.C. § 506 and not otherwise addressed herein.
Check one.
☒ None. If "None" is checked, the rest of § 3.3 need not be completed or reproduced.
☐ The claims listed below are being paid in full without valuation or lien avoidance.

These claims will be paid in full under the plan with interest at the rate stated below. Unless otherwise ordered, the applicable proof of claim sets the amount to be paid at the interest rate set below. These payments will be disbursed either by the trustee or directly by the debtor, as specified below. Any holder of an allowed secured claim treated in this section shall retain its lien on the property interest of the debtor(s) or the estate(s) until the earlier of payment of the underlying debt under applicable nonbankruptcy law or discharge of the underlying debt under 11 U.S.C. § 1328 and shall be required to satisfy its lien at the earliest of the time required by applicable nonbankruptcy law, order of this court, or discharge under 11 U.S.C. § 1328, unless there is a nonfiling co-debtor who continues to owe an obligation secured by the lien.

Unless otherwise stated in Part 8.1, any applicable taxes and insurance shall be paid directly by the debtor. If the debtor fails to timely pay any such taxes and insurance, then the creditor may pay those amounts.

| Name of creditor | Collateral | Estimated amount of claim | Interest rate | Estimated monthly payment to creditor |
|---|---|---|---|---|
| South state bank | Mobile Home | $16,488.68 | 10 % | $~~764.92~~ 512.17 (or more) |

Disbursed by
☒ Trustee
☐ Debtor

---

[13] ECF No. 28, filed Feb. 13, 2024.
[14] ECF No. 29, filed Feb. 22, 2024.

5

> 5.2 Maintenance of payments and cure of any default on nonpriority unsecured claims. Check one.
>
> ☐ None. If "None" is checked, the rest of § 5.2 need not be completed or reproduced.
>
> ☒ The debtor will maintain the contractual payments and cure, through the trustee, any prepetition default in payments on the unsecured claims listed below.
>
> | Name of creditor | Contractual payment (paid by the debtor) | Estimated amount of arrearage through month of filing or conversion | Monthly payment on arrearage to be disbursed by the trustee |
> |---|---|---|---|
> | South State Bank | $512.17 | $0 | $0 (or more) |
>
> Insert additional claims as needed.

The Court's record indicates that on February 27, 2024, the Clerk's Office informed Debtor that he had failed to file a Notice of Confirmation Hearing as required by SC LBR 3015-2. On March 7, 2024, Debtor filed another modified plan—his fourth attempt (the "Third Modified Plan").[15] The Third Modified Plan appears to be a revised version of the First Modified Plan, was again filed on the National Official Form 113, rather than the local form, and proposes to make installment payments to SouthState Bank in the amount of $512.17, for a total of $18,438.00, does not indicate that any arrearages are due, and also proposes to treat SouthState Bank's claim as an executory contract t assumed. The Third Modified Plan also plans to pay the Trustee's fees in the estimated amount of $1,645.00. Lastly, as for unsecured creditors, Section 5.1 proposes the following treatment:

> 5.1 Nonpriority unsecured claims not separately classified.
>
> Allowed nonpriority unsecured claims that are not separately classified will be paid, pro rata. If more than one option is checked, the option providing the largest payment will be effective. Check all that apply.
>
> ☐ The sum of $ 16,458.68
> ☐ 10 % of the total amount of these claims, an estimated payment of $ 2,001
> ☐ The funds remaining after disbursements have been made to all other creditors provided for in this plan.
>
> If the estate of the debtor(s) were liquidated under chapter 7, nonpriority unsecured claims would be paid approximately $_____. Regardless of the options checked above, payments on allowed nonpriority unsecured claims will be made in at least this amount.

On the same date the Third Modified Plan was filed, Debtor filed two separate Notices of Confirmation Hearing for a confirmation hearing scheduled for April 11, 2024; however,

---

[15] ECF No. 35.

6

both notices referenced the First Modified Plan filed on February 8, 2024, and neither provided proof that Debtor served the mailing matrix as required by SC LBR 3015-2. SouthState Bank filed an objection to the Third Modified Plan, reiterating the arguments made in its prior objection.[16] The Trustee filed another Objection to Confirmation of Plan.[17]

At the second confirmation hearing, held on April 11, 2024, Debtor made nonsensical arguments without directly addressing the issue of whether his proposed Third Modified Plan is confirmable. He began by asking if the Court was standing under oath. Debtor then launched into a series of confusing and irrational claims about a "living" or "natural" man and a "dead" or "straw" man, explaining that the Court is wrongfully coming after the living man when it is the dead man that owes the debt.[18] Debtor tried to ask further questions about the identity of the beneficiary of the trust to which the Trustee was appointed, indicating that it was his understanding from what he has read that the Trustee was appointed to him based on a trust agreement with the government, which has a fiduciary duty to pay for debts of its citizens. When asked what authorities he was relying upon in making such claims, he stated that the American school system was his authority.

---

[16] ECF No. 39, filed Apr. 4, 2024.

[17] ECF No. 38, filed Apr. 4, 2024.

[18] Debtor's pleadings and arguments in Court appear to rely on "redemptionist" or "sovereign citizen" theories that have been found to have no foundation in the law and have been consistently rejected by federal courts. *See*, *e.g.*, *Dooly v. Deutsche Bank Nat'l Tr. Co.*, No. 7:22-cv-00395-DCC-JDA, 2022 WL 2668454, at *3 (D.S.C. Apr. 1, 2022); *Nunez v. D.T.C.*, No. 4:13–244–TMC, 2013 WL 5409219, at *3 (D.S.C. Sept. 25, 2013); *In re Hayes*, No. 11–04722–JW, 2011 WL 4566378, at *3 (Bankr. D.S.C. Sept. 22, 2011); *In re Pelgrim*, No. 23-12670-NVA, 2024 WL 1336711, at *1 n.1 (Bankr. D. Md. Mar. 28, 2024). For a general description of the Sovereign Citizen movement, *see A Quick Guide to Sovereign Citizens*, UNC SCHOOL OF GOVERNMENT (Nov. 2013), https://www.sog.unc.edu/sites/www.sog.unc.edu/files/Sov%20citizens%20quick%20guide%20Nov%2013.pdf (noting that sovereign citizens may "question judges about the validity of their oaths" and refer to a "strawman" that is "separate and distinct from their true flesh and blood identity").

Debtor offered into evidence several documents that appear to have no relation to the confirmability of his Chapter 13 Plan.[19]

In an attempt to steer the Debtor towards addressing the issue at hand, the Court explained to Debtor that his plan, as proposed, did not appear feasible and confirmable under the standards of § 1325, and that he carried the burden to convince the Court otherwise. Debtor testified that his income comes from buying wholesale goods and selling them at flea markets. He estimated that he makes between $800 and $1100 a month and said that he has always made enough money to pay his bills, including regular payments to the Trustee since November 2023. The Trustee verified that Debtor is current with payments under the Plan. Ron Jones, counsel for SouthState Bank, indicated that by the terms of the Third Modified Plan, Debtor's payments to the Trustee only covered the arrearage owed to SouthState Bank, and Debtor has not been making the direct payments that continue to come due under the mortgage contract. The Court took the matter under advisement.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L), and this Court has authority to enter a final order.

---

[19] The documents submitted into evidence at the hearing include: excerpts of text referring to the Emergency Banking Law of 1933, *Chisholm v. Georgia*, House Joint Resolution 192, the Bible, Article I Section 8 of the U.S. Constitution, and 18 U.S.C. § 8; two birth certificates for Willie Carlton Kemmerlin; a copy of the Trustee's Objection to Plan Filed on December 4, 2023, with highlighted portions; a Retail Purchase Agreement with Goose Creek Mitsubishi for Debtor's purchase of a 2017 RAM 1500, which is not among the vehicles disclosed in Debtor's current Schedule A/B; and U.S. Postal Service receipts for money order payments addressed to the Trustee.

### I. Denial of Confirmation

For a Chapter 13 plan to be confirmed, the Court must find that it satisfies the requirements of 11 U.S.C. § 1325(a). *In re Richardson*, 643 B.R. 324 (Bankr. D.S.C. 2022). "Debtor has the burden of proving by a preponderance of the evidence that [his] plan meets the confirmation requirements of § 1325(a)." *In re Morris*, 628 B.R. 824, 828 (Bankr. D.S.C. 2021) (internal quotation marks and citations omitted). Here, the Court finds that Debtor's Third Modified Plan is not confirmable for several reasons.

First, § 1325(a)(1) requires that "[t]he plan complies with the provisions of this chapter and with the other applicable provisions of this title." Under Fed. R. Bankr. P. 3015(c) and SC LBR 3015-1, pleadings must be filed using the applicable local forms. More specifically, Fed. R. Bankr. P. 3015(c) provides that "[i]f there is an Official Form for a plan filed in a chapter 13 case, that form must be used unless a Local Form has been adopted in compliance with Rule 3015.1." In turn, SC LBR 3015-1 provides that "[t]he District of South Carolina local form plan, adopted pursuant to Fed. R. Bankr. P. 3015 and as amended from time to time, **must be used** as the plan and as any modified plan proposed in a chapter 13 plan." (emphasis added). Debtor knows how to access the local forms, as two prior plans have been filed using the local form; yet, the Third Modified Plan was filed using the National Official Form 113 instead. Additionally, Fed. R. Bankr. P. 3015(d) and SC LBR 3015-2 require proper service of the Notice of Confirmation Hearing and a copy of the corresponding proposed plan. SC LBR 9013-4 requires the Chapter 13 plan and any embedded motions be served on the mailing matrix. Here, Debtor has not proven that he properly served the Third Modified Plan and provided notice of the opportunity to object to the plan. The Court's record reflects that Debtor filed various U.S. postal receipts as

evidence of service, but the receipts do not indicate what documents were served and to whom they were sent. Accordingly, not only is the Court unable to verify that the Third Modified Plan was served on all creditors, but Debtor has also failed to show otherwise.

Second, Debtor's plan does not satisfy the requirements provided in § 1325(a)(5) for treatment of allowed secured claims. SouthState Bank, the only secured claimholder, has not accepted the Third Modified Plan (or any proposed plans for that matter); the treatment of its claim proposed therein is inconsistent throughout the plan, and it appears that the total value of the proposed plan payments is less than the allowed amount of SouthState Bank's claim; and Debtor has not proposed to surrender the property securing the claim.

Third, Debtor's plan is not feasible as required by § 1325(a)(6). Debtor's schedules have not been amended since they were filed, so Schedules I and J still reflect a negative monthly net income. Even if Debtor's income is $1,100 per month as his testimony indicated is the high end of what he typically makes, that income still does not exceed the monthly expenses he reported. And although Debtor has kept up with payments to the Trustee so far, he has failed to continue making direct contract payments to SouthState Bank. Accordingly, the Court is not convinced by Debtor's testimony that he can afford the $507.27 monthly plan payments.[20] Moreover, as for unsecured creditors, Section 5.1 of the Third Modified Plan has inconsistent language. On one side, the plan appears to anticipate the sum of nonpriority unsecured claims to be $16,458.58 (which actually

---

[20] As the Trustee's Objection to Confirmation of Plan points out, the terms of Debtor's proposed plan provide that Debtor will make payments of $457.00 per month for 36 months and $50.27 per month for 36 months. Given Debtor's income level, the Court interprets this language to mean that Debtor will pay the two monthly payment amounts concurrently, as the plan term would otherwise be 72 months, which would exceed the time limits under § 1322(d).

10

appears to be the amount owed to SouthState Bank), but it also states that 10% of these claims would be paid. Aside from the inconsistency, the further proposed payments are an additional reason as to why the proposed plan is unfeasible. Debtor carries the burden of proof on the confirmation requirements of § 1325(a), and his self-serving and irrational arguments do not establish by a preponderance of the evidence that Debtor's plan is confirmable as filed.

## II.   Dismissal of Bankruptcy Case

After four unsuccessful attempts to propose a confirmable plan and without any indication that Debtor is intending to advance the case toward confirmation, cause exists to dismiss the case.

As set forth above, in November of 2023, the Trustee filed and served the Notice of Dismissal, notifying Debtor that his failure to meet the requirements of the Bankruptcy Code may result in the dismissal of the case. The Notice of Dismissal provided an itemized list of information and documents needed, including a modified plan with proper service as required under SC LBR 3015-2. In the notice, the Trustee requested that the Court dismiss the case at the confirmation hearing pursuant to 11 U.S.C. § 1307(c) without further notice if the Debtor failed to provide and/or file the documents. The Debtor's failure to propose a confirmable plan after being given the chance to make several attempts is grounds for dismissal under § 1307(c), which provides, among other reasons for dismissal:

> On request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—
> (1) unreasonable delay by the debtor that is prejudicial to creditors; [or]
> . . .

> (4) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan.

11 U.S.C. § 1307(c). Debtor's failure to propose a confirmable plan, cure case deficiencies, or make continued mortgage payments has caused unreasonable delay that is prejudicial to creditors. Furthermore, the Court may dismiss a case pursuant to 11 U.S.C. § 1307(c) *sua sponte*. *See* 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."); *In re Richardson*, 643 B.R. 324 (Bankr. D.S.C. 2022); *In re Brown*, 399 B.R. 162, 165 (Bankr. W.D. Va. 2009); *In re Giles*, 641 B.R. 255, 260 (Bankr. S.D. Fla. 2022). Finally, even in the absence of an objection to confirmation on good faith grounds, the Court has an independent duty to determine whether the proposed chapter 13 plan was filed in good faith. *See* 11 U.S.C. § 1325(a)(3); *In re McNeely*, 366 B.R. 542, 548 (Bankr. N.D.W. Va. 2007) (stating that "the court has the independent duty to determine if a proposed Chapter 13 plan constitutes an abuse of the provisions, purpose, or spirit of Chapter 13."); *Noreen v. Slattengren,* 974 F.2d 75, 76 (8th Cir. 1992) (stating that a good faith requirement "demands a separate, independent determination" by the bankruptcy court).

This case has been pending since November 2023, and after four attempts, Debtor still does not have a confirmable plan. To no avail, the Court has encouraged Debtor to seek counsel so that he does not continue to file amended plans that still do not comply with the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the Local Rules. Debtor has not done so. Moreover, Debtor has started asserting legal positions that have

12

not been adopted or accepted by federal courts. The Court will not continue to entertain Debtor's nonsensical arguments to the detriment of his creditors. Pursuant to the Notice of Dismissal and the terms of the CII Order entered on February 6, 2024, Debtor's failure to file and properly serve a confirmable modified plan constitutes grounds for dismissal without further notice or hearing.

IT IS, THEREFORE, ORDERED THAT confirmation of the modified Chapter 13 plan filed on March 7, 2024, is denied, and the case is hereby dismissed.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**04/18/2024**



Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 04/18/2024